**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.: MJM-26-0274** |
| | * | |
| **CORI GRANT,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**…oOo…**

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits this Detention Memorandum in advance of defendant Cori Grant's detention hearing scheduled for Monday, September 14, 2026, at 2:00 p.m.

## Introduction

The Court should order detention. Defendant Grant is charged with conspiracy to distribute and possession with intent to distribute more than five kilograms of cocaine in connection with a large scale trafficking organization – the Robinson Drug Trafficking Organization ("Robinson DTO"). The Robinson DTO trafficked huge, kilogram quantities of cocaine obtained from a source of supply in Mexico. The drugs were usually transported and concealed in steel structures loaded onto flatbed tractor trailers. The loads of cocaine were delivered to one of many warehouses utilized by the Robinson DTO, where the drugs were unloaded and then distributed to the Robinson DTO's customers. During the investigation, investigators determined that defendant Cori Grant was one of the Robinson DTO's primary customers, receiving large, kilogram quantities of cocaine from the Robinson DTO. On the day of his arrest in May 2026, Grant was

in possession of approximately 38 kilograms located in his vehicle. A search of one of Grant's residences yielded another four kilograms of cocaine.

Given the seriousness of the offense, Grant's criminal history (including a prior federal conviction and 240 month sentence of imprisonment), and the danger posed by Grant to the community, it is apparent that no condition or combination of conditions will reasonably assure the safety of the community.

**Factual and Procedural Background**

In September/October 2025, DEA Agents initiated an investigation into the Robinson DTO. During the investigation into the Robinson DTO, agents learned from multiple confidential sources that Robinson was a well-known large-scale drug supplier in Baltimore, Maryland. The CSs estimated that Robinson obtained between 50 to 150 kilograms of cocaine at a time. Once source also believed that Robinson obtained heroin and/or fentanyl.

During the investigation into Robinson and the Robinson DTO, investigators learned that Robinson received large shipments of drugs that were concealed inside steel structures packed in crates loaded on flatbed trailers and delivered to him at his two warehouses – the Evergreen Street warehouse and the Commerce Drive warehouse. Robinson then unloaded the drugs and concealed them inside his warehouses. Robinson then concealed drug proceeds (U.S. currency) inside the crates/steel structures, loaded them onto flatbed trailers, then shipped them to his source of supply of drugs.

During the investigation, the Robinson DTO received numerous shipments of drugs at Robinson's warehouses. Specifically, shipments of suspected narcotics were received by the Robinson DTO on the following dates:

- October 27, 2025
- November 13, 2025
- January 2, 2026
- February 3, 2026
- April 10, 2026
- May 4, 2026

The shipments of drugs usually arrived on flatbead trailers, concealed in steel structures as depicted below:



*Delivery of drugs to the Robinson DTO in October 2025*




*Delivery of drugs to the Robinson DTO in January 2026*




*Delivery of drugs to the Robinson DTO in February 2026*

Investigators identified Grant as a member and large drug customer of the Robinson DTO. Grant was observed during surveillance obtaining what investigators believe was large, kilogram-quantity of drugs from co-defendant Shane Green, which Green obtained directly from co-defendant Robinson.

For example, on February 3, 2026, a shipment of drugs were delivered to a warehouse

utilized by co-defendant Robinson and the Robinson DTO. The warehouse was located on Commerce Drive in Halethorpe, Maryland. On February 4, 2026, investigators saw Robinson arrive at the warehouse in one of his vehicles. Robinson's worker exited the vehicle and entered the warehouse via the front door as Robinson drove to the back of the building. Robinson then backed his vehicle to the rear door of the warehouse. Robinson and his worker proceeded to load three heavy trash bags into the rear passenger compartment area of the vehicle. The two men then departed the warehouse.



At approximately 4:45 p.m., investigators saw Robinson and co-defendant Shane Green meet near the intersection of Walbrook Avenue and North Monroe Street. The two men spoke briefly and then left the area. Approximately 35 minutes later, investigators saw Robinson and Green meet again in the 2300 block of Windsor Avenue near the intersection of North Bentalou Street. Green retrieved two of the three large trash bags filled with what appeared to be numerous rectangular objects in each bag, consistent with the shape of kilograms of narcotics. Green placed the two bags into his vehicle and drove away. Green returned a short time later and retrieved the third black trash bag from Robinson's vehicle and place the bag into his vehicle. Green then left the area, followed by investigators.





A few minutes later, investigators observed Green parking his car in the 2000 block of Wheeler Avenue, Baltimore, Maryland 21216. There, investigators observed Green meet with Grant. They loaded three weighted black trash bags into the trunk of Grant's vehicle. Investigators then observed Green carrying two duffel bags that appeared to be heavy away from Grant's vehicle and placed the duffel bags into his vehicle. The two men then left the area. Investigators believe that that the black trash bags contained kilogram quantities of drugs and the duffel bags were filled with bulk quantities of U.S. currency that was payment for the drugs.

On April 10, 2026, the Robinson DTO received another large shipment of drugs concealed in crates/streel structures. After obtaining the supply of drugs, the Robinson DTO began distributing the drugs immediately. At approximately 4:40 p.m. on April 10th, Robinson carried three weighted black bags out of the warehouse located on Commerce Drive and placed the bags into one of his vehicles. He then left the warehouse. At or around that same time, Grant traveled to his apartment in Towson, Maryland.

Investigators later located Robinson in the rear of 3505 Wabash Avenue meeting with Green. Around that time, court-authorized GPS tracking data from Grant's vehicle indicates that Grant left his Towson apartment and traveled into Baltimore, parking in the area of Ocala Avenue and Towanda Avenue. Based on previously patterns observed by law enforcement agents, investigators believed Green was obtaining drugs from Robinson to be delivered to Grant.

Green then left Robinson and drove to Ocala Avenue. Green parked his vehicle near Grant's vehicle. Green removed two weighted black bags from his vehicle and carried them to Grant's vehicle. Green placed both bags into the trunk of Grant's vehicle and then spoke to Grant briefly. Green then walked away from Grant's vehicle carrying two red weighted bags as Grant left the location. Green placed the two red bags into his vehicle and left the location.





Investigators followed Grant to the area of Aiken Street and Bonaparte Avenue in Baltimore City. There, Grant parked his vehicle on Aiken Street, removed at least one of the weighted black bags from his vehicle, and carried the bag into a residence on Bonaparte Avenue. Grant left the residence approximately one hour later without the bag, but his front hoodie pocket appeared to contain a heavy object, depicted below.



On May 4, 2026, 27 federal search and seizure warrants were obtained for persons, residences, and vehicles involved with the Robinson DTO.[1] On that same day, the Robinson DTO obtained a new supply of drugs on the morning of May 4, 2026, at the warehouse located on Commerce Drive.

On May 5, 2026, the Robinson DTO continued to distribute drugs to their customers. Specifically, Robinson obtained a supply of drugs from the Commerce Drive warehouse and transported them to his warehouse located on Evergreen Street where they were placed into the rear of co-defendant Green's vehicle. Green then left the Evergreen Street warehouse in his vehicle and traveled to the 2000 block of Ruxton Avenue where he met with Grant. Green removed the bags filled with kilogram quantities of cocaine and placed them into the trunk of Grant's vehicle.

[1] United States District Court for the District of Maryland, matter nos. 1:26-mj-01070-CJC through 1:26-mj-01096-CJC.

Green and Grant then moved their vehicles one block over where Green removed bags from Grant's vehicle and placed them into his vehicle. Investigators then followed Grant to the 1600 block of Roundhill Road in East Baltimore where he pulled curbside. Grant appeared to be waiting for someone, likely to conduct a drug transaction. Investigators decided to execute the search warrants pertaining to Grant and his vehicle. Investigators apprehended Grant without incident and removed him from his vehicle. Investigators seized two trash bags and a bookbag containing a total of 38 kilograms of cocaine from the trunk of Grant's vehicle.



*38 Kilograms of cocaine seized from Grant's vehicle*

An additional four kilograms of cocaine were located in one of Grant's residences:



*Kilograms of cocaine seized from one of Grant's residences*

In sum, investigators seized from the Robinson DTO more than 140 kilograms of cocaine (approximately 42 kilograms were possessed by Grant); approximately twelve kilograms of fentanyl (enough to kill a significant portion of the population in Maryland); smaller amounts of a variety drugs (including methamphetamine); approximately $1.3 million in U.S. currency; firearms; drug packing paraphernalia; and dozens of cellular devices.

**Argument**

When there is probable cause to believe that a defendant committed an offense under the Controlled Substances Act that carries a maximum sentence of 10 years or more of imprisonment, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). That presumption is subject to rebuttal by the defendant, which is a "limited burden of production" for the defendant to show he does not pose a risk of flight or danger to the community. *United States v. Weddington*, Crim. No. RDB-19-597, 2020 WL 4569524, *2 (D. Md. Aug. 7, 2020) (quoting *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). However, the

presumption in favor of detention is not eliminated once the defendant meets the burden of production; it becomes a factor to be considered in evaluating whether to detain the defendant. *Id.*

When seeking detention based on community safety or risk of flight, the government's burden is to demonstrate the risk posed by the defendant by clear and convincing evidence. 18 U.S.C. § 1342(f)(2). When seeking a detention order, the government may proceed by proffer of evidence. *See United States v. White*, Crim. No. PWG-13-436, 2015 WL 2374229, *2 (D. Md. May 15, 2015). In determining whether detention is warranted, 18 U.S.C. § 3142(g) directs the Court to consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release.

Here, each of the Section 3142(g) factors weigh in favor of detention. There is clear and convincing evidence that no condition or combination of conditions can assure the safety of the community.

<u>Nature and Circumstances of the Offense</u>

Grant is charged with serious drug offenses that carry significant penalties, including counts that carry mandatory minimum sentences of ten years' imprisonment up to a maximum sentence of life imprisonment. The specific circumstances of the conduct underlying the offenses heighten their seriousness. Over the course of the conspiracy, the Robinson DTO, including Grant, trafficked and distributed hundreds of kilograms of cocaine in around the Baltimore metropolitan area. The DTO not only sold drugs directly to customers for individual use, but also in larger distribution-level quantities to other potential sellers who could then go on to further distribute drugs in Maryland and beyond.

Importantly, Grant was identified as one a regular and important customer of the Robinson DTO. During the investigation, Grant received many large trash bags that were filled with kilogram quantities of cocaine. Grant was arrested in May 2026, with approximately 42 kilograms of cocaine seized from his vehicle and one of his residences. Grant was involved in every aspect of drug trafficking for the Robinson DTO at a high level.

The nature of the offenses is serious enough that it creates a presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). Even if Grant can meet his burden to produce any evidence suggesting he may not be a danger to the community, that presumption remains a factor. Overall, the seriousness of the charged offenses weighs in favor of detention.

Weight of the Evidence

The government's evidence is strong. Grant's receipt of large quantities of cocaine and the seizure of 42 kilograms from his vehicle and one of his residences is more than substantial. The cumulative evidence against Grant in this case is significant, if not overwhelming. This factor strongly weighs in favor of detention.

History and Characteristics of the Defendant

Grant has a significant and troubling criminal history. Beginning in 1998, at age 19, Grant began accumulating convictions for drug and firearm offenses in Baltimore City. In 2004, Grant was charged in a federal indictment with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846; Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(o); Carjacking in violation of 18 U.S.C. § 2119; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). *See United States v. Corey Grant*, criminal no. SAG-04-0004. Grant pleaded guilty on November 22, 2005, to Possession of a Firearm in Furtherance of a Drug Trafficking Crime. On February 3, 2006, Grant was sentenced to 240 months' imprisonment in 2006, followed by three

years of supervised release. *Id*. at ECF no 150. His term of supervised release was terminated early in May 2025. *Id*. at ECF nos. 409-410. Grant was arrested in possession of the large quantities of cocaine approximately one year after his federal supervised release was terminated.

It is the government's position that Grant cannot abide by any conditions or combination of conditions of pretrial release that could be set in this matter. Grant's history paints a clear picture of recidivism, and his return to substantial, large-scale drug trafficking following a 20-year federal prison term and approximately one year after early termination of supervised release should shock the Court. This factor alone weighs strongly in favor of detention.

<u>Nature and Seriousness of the Danger to Any Person or the Community</u>

The drugs received by and dispensed by Grant during the investigation presents a serious and significant danger to the community. The risks associated with cocaine are well known to this Court. Based on the evidence gathered throughout the investigation, the controlled substances seized in May 2026 (large quantities of cocaine, fentanyl, etc.) represent just a fraction of the Robinson DTO's regular business of trafficking and distributing colossal amounts of drugs in the Baltimore metropolitan area and beyond. There is no doubt that Grant's drug trafficking caused significant damage to the Baltimore community that is common to drug trafficking, including violence that is always present at the street level. Moreover, Grant's failure to become rehabilitated following a significant and substantial federal term of imprisonment is a clear indicator of Grant's danger to himself and the community. There is no doubt that the danger Grant poses to the community weighs in favor of detention.

In short, evaluation of all the Section 3142(g) factors shows, by clear and convincing evidence, that the Defendant should be detained pending trial.

## Conclusion

For the reasons stated above, and for any others presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the safety to the community or Grant's appearance for court proceedings. Accordingly, defendant Cori Grant should be detained pending trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

John W. Sippel, Jr.
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4807

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Government's Detention Memorandum was served via the ECF filing system and by email to:

Andrew C. White, Esquire
400 E. Pratt St., Suite 900
Baltimore, Maryland 21202

John W. Sippel, Jr.
Assistant United States Attorney