**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.: MJM-26-0274** |
| | * | |
| **SHANE GREEN,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**…oOo…**

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits this Detention Memorandum in advance of defendant Cori Grant's detention hearing scheduled for Tuesday, September 15, 2026, at 2:30 p.m.

### Introduction

The Court should order detention. Defendant Green is charged in Grant is the Indictment with: (1) Conspiracy to Distribute and Possess with Intent to Distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); and (2) Possession with Intent to Distribute five kilograms or more cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). ECF no. 29. The indictment arises from Green's connection to and involvement with a large-scale trafficking organization – the George Robinson Drug Trafficking Organization ("Robinson DTO"). The Robinson DTO trafficked huge, kilogram quantities of cocaine obtained from a source of supply in Mexico. The drugs were usually transported and concealed in steel structures loaded onto flatbed tractor trailers. The loads of cocaine were delivered to one of many warehouses utilized by the Robinson DTO, where the drugs were unloaded and then distributed to the Robinson DTO's customers. During the investigation, investigators determined that defendant Green assisted lead

defendant George Robinson with distributing large, kilogram quantities of cocaine to the Robinson DTO's customers. The investigation also revealed that Green was a drug dealer distributing huge quantities of cocaine in and around Baltimore City. In May 2026, federal law enforcement agents searched Green's vehicle, a Ford SUV, and seized approximately seven kilograms of cocaine concealed inside of the vehicle in a "trap." In addition, law enforcement agents seized approximately $163,580 in U.S. currency from Green's apartment.

Given the seriousness of the offense, Green's criminal history, and the danger posed by Green to the community, it is apparent that no condition or combination of conditions will reasonably assure the safety of the community.

**Factual and Procedural Background**

In September/October 2025, DEA Agents initiated an investigation into the Robinson DTO. During the investigation into the Robinson DTO, agents learned from multiple confidential sources that co-defendant George Robinson was a well-known large-scale drug supplier in Baltimore, Maryland. The CSs estimated that Robinson obtained between 50 to 150 kilograms of cocaine at a time. Once source provided that Robinson also obtained and distributed heroin and/or fentanyl.

During the investigation into Robinson and the Robinson DTO, investigators learned that Robinson received large shipments of drugs that were concealed inside steel structures packed in crates loaded on flatbed trailers and delivered to him at his two warehouses – the Evergreen Street warehouse and the Commerce Drive warehouse. Robinson then unloaded the drugs and concealed them inside his warehouses. Robinson then concealed drug proceeds (U.S. currency) inside the crates/steel structures, loaded them onto flatbed trailers, then shipped them to his source of supply of drugs.

During the investigation, the Robinson DTO received numerous shipments of drugs at Robinson's warehouses. Specifically, shipments of suspected narcotics were received by the Robinson DTO on the following dates:

- October 27, 2025
- November 13, 2025
- January 2, 2026
- February 3, 2026
- April 10, 2026
- May 4, 2026

The shipments of drugs usually arrived on flatbead trailers, concealed in steel structures as depicted below:



*Delivery of drugs to the Robinson DTO in October 2025*




*Delivery of drugs to the Robinson DTO in January 2026*




*Delivery of drugs to the Robinson DTO in February 2026*




*Delivery of drugs to the Robinson DTO in April 2026*

<u>*Green and the Robinson DTO*</u>

While investigating the Robinson DTO, law enforcement agents identified Green as a significant member and large drug customer of the Robinson DTO. When the large, kilogram-quantity shipments of cocaine arrived in Baltimore at the Robinson DTO's warehouses, Green appeared at the warehouses to assist and distribute the large, kilogram-quantity of drugs for the Robinson DTO. Green was observed meeting with co-defendant Cori Grant on many occasions, exchanging large bags containing kilogram-quantities of cocaine and U.S. currency.

For example, following the arrival of the shipment of drugs at the Robinson DTO's Evergreen Street warehouse, Green arrived at the Evergreen Street warehouse in his black 2014 Ford Edge SUV. Green parked in the rear of the warehouse near the roll-up door. Green left and returned to the warehouse in his Ford vehicle numerous times that day and on the days following

the arrival of the shipment of drugs to the warehouse.




*Activity at the Evergreen Street warehouse on November 7, 2025*

On November 13, 2025, another tractor trailer delivered 16 wooden crates with yellow structures inside of them to the Evergreen Street warehouse.



*Shipment of drugs at the Evergreen Street warehouse on November 13, 2025*

After the shipment of drugs arrived on November 13, 2025, Green was observed at the Evergreen Street warehouse in his Ford SUV. Investigators believe Green was at the warehouse to pick-up drugs and deliver them the DTO's customers.

On November 15, 2025, Green arrived at the Evergreen Street warehouse in his Ford vehicle and delivered a large, heavy duffel bag to Robinson. Robinson then placed the bag in his box truck. Law enforcement agents believe that the duffel bag contained drug proceeds.



*Green delivering large duffel bag to Robinson on November 15, 2025*

On January 2, 2026, a tractor trailer with a flatbed arrived and parked at the Robinson DTO's warehouse located on Commerce Drive in Halethorpe, Maryland. The flatbed carried approximately 16 wooden crates that appeared to have metal/steel structures inside of them.[1] ROBINSON and his unidentified worker unloaded all the crates using a forklift and moved them to the rear of the warehouse through the roll-up door. On Janaury 9, 2026, Green and Robinson were observed entering Robinson's laundromat business located on Walbrook Avenue in Baltimore City. A few minutes later, Green exited the location carrying a black bag. Robinson followed, carrying what appeared to be a box concealed under a blanket. Agents believe that Robinson and Green removed drugs or drug proceeds from the Commerce Drive warehouse and

[1] The wooden crates observed on January 2, 2026, appeared similar, if not identical, to the crates observed by investigators in late October 2025, and mid-November 2025.

transported them to the Walbrook Avenue laundromat.




*Green and Robinson at Robinson's Walbrook Avenue laundromat on January 9, 2026*

On February 3, 2026, a shipment of drugs were delivered to the Commerce Drive warehouse utilized by the Robinson DTO. On February 4, 2026, investigators saw Robinson arrive at the warehouse in one of his vehicles. Robinson's worker exited the vehicle and entered the warehouse via the front door as Robinson drove to the back of the building. Robinson then backed his vehicle to the rear door of the warehouse. Robinson and his worker proceeded to load three heavy trash bags into the rear passenger compartment area of the vehicle. The two men then departed the warehouse.



At approximately 4:45 p.m., investigators saw Robinson and Green meet near the intersection of Walbrook Avenue and North Monroe Street. The two men spoke briefly and then left the area. Approximately 35 minutes later, investigators saw Robinson and Green meet again in the 2300 block of Windsor Avenue near the intersection of North Bentalou Street. Green retrieved two of the three large trash bags filled with what appeared to be numerous rectangular objects in each bag, consistent with the shape of kilograms of narcotics. Green placed the two bags into his vehicle and drove away. Green returned a short time later and retrieved the third black trash bag from Robinson's vehicle and place the bag into his vehicle. Green then left the area, followed by investigators.





A few minutes later, investigators observed Green parking his car in the 2000 block of Wheeler Avenue, Baltimore, Maryland 21216. There, investigators observed Green meet with Grant. They loaded three weighted black trash bags into the trunk of Grant's vehicle. Investigators then observed Green carrying two duffel bags that appeared to be heavy away from Grant's vehicle and placed the duffel bags into his vehicle. The two men then left the area. Investigators believe that that the black trash bags contained kilogram quantities of drugs and the duffel bags were filled with bulk quantities of U.S. currency that was payment for the drugs.

On April 10, 2026, the Robinson DTO received another large shipment of drugs concealed in crates/streel structures. The shipement was delivered to a third warehouse associated with the Robinson DTO, located on Kirk Avenue in Baltimore. After obtaining the supply of drugs, the Robinson DTO began distributing the drugs immediately. At approximately 4:40 p.m. on April 10th, Robinson carried three weighted black bags out of the warehouse located on Commerce Drive and placed the bags into one of his vehicles. He then left the warehouse. At or around that same time, Grant traveled to his apartment in Towson, Maryland.

Investigators later located Robinson in the rear of 3505 Wabash Avenue meeting with

Green. Around that time, court-authorized GPS tracking data from Grant's vehicle indicates that Grant left his Towson apartment and traveled into Baltimore, parking in the area of Ocala Avenue and Towanda Avenue. Based on previously patterns observed by law enforcement agents, investigators believed Green was obtaining drugs from Robinson to be delivered to Grant.

Green then left Robinson and drove to Ocala Avenue. Green parked his vehicle near Grant's vehicle. Green removed two weighted black bags from his vehicle and carried them to Grant's vehicle. Green placed both bags into the trunk of Grant's vehicle and then spoke to Grant briefly. Green then walked away from Grant's vehicle carrying two red weighted bags as Grant left the location. Green placed the two red bags into his vehicle and left the location.



On May 4, 2026, 27 federal search and seizure warrants were obtained for persons, residences, and vehicles involved with the Robinson DTO.[2] On that same day, the Robinson DTO obtained a new supply of drugs on the morning of May 4, 2026, at the warehouse located on Commerce Drive.

[2] United States District Court for the District of Maryland, matter nos. 1:26-mj-01070-CJC through 1:26-mj-01096-CJC.

On May 5, 2026, the Robinson DTO continued to distribute drugs to their customers. Specifically, Robinson obtained a supply of drugs from the Commerce Drive warehouse and transported them to his warehouse located on Evergreen Street where they were placed into the rear of co-defendant Green's vehicle. Green then left the Evergreen Street warehouse in his vehicle and traveled to the 2000 block of Ruxton Avenue where he met with Grant. Green removed the bags filled with kilogram quantities of cocaine and placed them into the trunk of Grant's vehicle. Green and Grant then moved their vehicles one block over where Green removed bags from Grant's vehicle and placed them into his vehicle. Investigators then followed Grant to the 1600 block of Roundhill Road in East Baltimore where he pulled curbside. Grant appeared to be waiting for someone, likely to conduct a drug transaction. Investigators decided to execute the search warrants pertaining to Grant and his vehicle. Investigators apprehended Grant without incident and removed him from his vehicle. Investigators seized two trash bags and a bookbag containing a total of 38 kilograms of cocaine from the trunk of Grant's vehicle.




*May 5th exchange between Green and Grant - 38 kilograms of cocaine seized*

In sum, investigators seized from the Robinson DTO more than 140 kilograms of cocaine (seven kilograms of cocaine were seized from a trap in Green's vehicle); approximately twelve kilograms of fentanyl (enough to kill a significant portion of the population in Maryland); smaller

amounts of a variety drugs (including methamphetamine); approximately $1.3 million in U.S. currency (approximately $164,000 in U.S. currency seized from Green's apartment); firearms; drug packing paraphernalia; and dozens of cellular devices.

**Argument**

When there is probable cause to believe that a defendant committed an offense under the Controlled Substances Act that carries a maximum sentence of 10 years or more of imprisonment, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). That presumption is subject to rebuttal by the defendant, which is a "limited burden of production" for the defendant to show he does not pose a risk of flight or danger to the community. *United States v. Weddington*, Crim. No. RDB-19-597, 2020 WL 4569524, *2 (D. Md. Aug. 7, 2020) (quoting *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). However, the presumption in favor of detention is not eliminated once the defendant meets the burden of production; it becomes a factor to be considered in evaluating whether to detain the defendant. *Id.*

When seeking detention based on community safety or risk of flight, the government's burden is to demonstrate the risk posed by the defendant by clear and convincing evidence. 18 U.S.C. § 1342(f)(2). When seeking a detention order, the government may proceed by proffer of evidence. *See United States v. White*, Crim. No. PWG-13-436, 2015 WL 2374229, *2 (D. Md. May 15, 2015). In determining whether detention is warranted, 18 U.S.C. § 3142(g) directs the Court to consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release.

Here, each of the Section 3142(g) factors weigh in favor of detention. There is clear and convincing evidence that no condition or combination of conditions can assure the safety of the community.

<u>Nature and Circumstances of the Offense</u>

Green is charged with serious drug offenses that carry significant penalties, including counts that carry mandatory minimum sentences of ten years' imprisonment up to a maximum sentence of life imprisonment. The specific circumstances of the conduct underlying the offenses heighten their seriousness. Over the course of the conspiracy, the Robinson DTO, with Green's assistance, trafficked and distributed hundreds of kilograms of cocaine in around the Baltimore metropolitan area. The DTO not only sold drugs directly to customers for individual use, but also in larger distribution-level quantities to other potential sellers who could then go on to further distribute drugs in Maryland and beyond.

The evidence in the case establishes that Green played a critical role in the success of the Robinson DTO, allowing co-defendant Robinson to ensure that the kilograms of drugs were distributed while remaining removed from the lower-level customers and dealers. During the investigation, Green appeared following every delivery of drugs at one of the Robinson DTO's warehouses and distributed the cocaine to the Robinson DTO's customers, including co-defendant Cori Grant. Following Green and Grant's exchange on May 5, 2026, agents seized approximately 38 kilograms of cocaine seized from Grant's vehicle. In addition, Green's manner and means of drug trafficking were sophisticated, as he used his Ford SUV vehicle, equipped with a trap near the front passenger of his vehicle, to conceal and transport kilograms of drugs. Seven kilograms of cocaine were concealed inside of Green's Ford SUV when it was searched in May 2026. In addition, agents seized a large sum of U.S. currency (approximately $164,000) from Green's

apartment. There is no doubt that Green was a significant member of the Robinson DTO and closely assisted with the distribution of large, kilogram-quantities of cocaine in and around the Baltimore metropolitan area.

Importantly, the nature of the offenses is serious enough that it creates a presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). Even if Green can meet his burden to produce any evidence suggesting he may not be a danger to the community, that presumption remains a factor. Overall, the seriousness of the charged offenses weighs in favor of detention.

Weight of the Evidence

The government's evidence is strong. During the investigation regular and sometimes daily surveillance by law enforcement agents captured Green's covert movements. He was regularly observed at the Robinson DTO's warehouses immediately following the shipments of drugs to the DTO, exchanging bags with Robinson, Grant, and others involved in the drug conspiracy. Moreover, Green's involvement in the drug exchange on May 6, 2026, is significant. Agents observed, on the ground and through the air, Green's movements from receipt of drugs from Robinson to delivery to Grant, resulting in the seizure of 38 kilograms of cocaine from Grant's vehicle. In addition, Green's vehicle concealed seven kilograms of cocaine in a trap near the front passenger compartment, and approximately $164,000 in U.S. currency was seized from Green's apartment. The cumulative evidence against Green and other members of the DTO is significant, if not overwhelming. This factor strongly weighs in favor of detention.

History and Characteristics of the Defendant

Green has a significant but dated criminal history, primarily involving narcotics offenses. Beginning in 1994, at age 18, Green began accumulating convictions for drug offenses in the Baltimore City court system. Green purportedly works as a handyman for a family member. From

October 2025 through May 2026, based on surveillance and evidence collected during the investigation, Green's primary occupation was assisting the Robinson DTO distribute narcotics. The drugs seized from Green's vehicle and large sum of cash located in Green's apartment clearly establishes his drug trafficking.

It is the government's position that Green cannot abide by any conditions or combination of conditions of pretrial release that could be set in this matter. Green's history and conduct paints a clear picture of drug trafficking as his primary source of income. This factor alone weighs strongly in favor of detention.

<u>Nature and Seriousness of the Danger to Any Person or the Community</u>

The drugs received by and dispensed by the Robinson DTO and Green during the investigation presents a serious and significant danger to the community. The risks associated with cocaine are well known to this Court. Based on the evidence gathered throughout the investigation, the controlled substances seized in May 2026 (large quantities of cocaine, fentanyl, etc.) represent just a fraction of the Robinson DTO's regular business of trafficking and distributing colossal amounts of drugs in the Baltimore metropolitan area and beyond. There is no doubt that Green's drug trafficking caused significant damage to the Baltimore community that is common to drug trafficking, including violence that is always present at the street level. In his motion for release, Green argues that there is no evidence that he is linked to any violence. *See* Def's Motion, ECF no. 30 at 18-20. Green's argument, however, fails to recognize the violence that is inherent to drug trafficking, especially in Baltimore City. The distribution of massive quantities of cocaine can be inherently linked to the violence that is associated with street-level drug-dealing, and Green was an integral player in distributing those drugs to the lower-level drug

consumer. Thus, the danger Green poses to the community is irrefutable and weighs in favor of detention.

In short, evaluation of all the Section 3142(g) factors shows, by clear and convincing evidence, that the defendant Shane Green should be detained pending trial.

**Conclusion**

For the reasons stated above, and for any others presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the safety to the community or Green's appearance for court proceedings. Accordingly, defendant Shane Green should be detained pending trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

John W. Sippel, Jr.
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4807

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Government's Detention Memorandum was served via the ECF filing system and by email to:

Tony Garcia, Esquire
7 St. Paul Street, Suite 1100
Baltimore, Maryland 21202

John W. Sippel, Jr.
Assistant United States Attorney