**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | Criminal No. 1:26-cr-00274-MJM-2 |
| | * | |
| v. | * | Hon. J. Mark Coulson |
| | * | U.S. Magistrate Judge |
| SHANE GREEN, | * | |
| | * | Detention Hearing: Sept. 15, 2026, 2:30 |
| Defendant. | * | p.m. |
| | * | |
| | * | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR PRETRIAL RELEASE ON CONDITIONS**

Defendant Shane Green, by undersigned counsel, replies briefly to the Government's Detention Memorandum, ECF 34 (the "Memorandum"). The Memorandum is eighteen pages long. It does not mention the four months.

## I. THE MEMORANDUM CONFIRMS THE MOTION'S CENTRAL FACT AND NEVER ADDRESSES IT

The Motion rests on one fact: that the government, with everything it now offers as proof of dangerousness already in hand, left Mr. Green at liberty on no conditions for four months, and he did not flee, did not reoffend, and was arrested without incident. ECF 30 at 1–2, 6–8. The Memorandum does not dispute that fact. It establishes it. By the government's own account, agents had Mr. Green under "regular and sometimes daily surveillance" from October 2025 through May 2026, ECF 34 at 16; obtained twenty-seven search warrants on May 4, 2026, *id.* at 12 & n.2; watched the May 5 exchange with Mr. Grant "on the ground and through the air," *id.* at 16; and in May seized seven kilograms

of cocaine from a vehicle and \$164,000 from an apartment it attributes to him, *id.* at 2, 15–16.

Every fact in the Memorandum's eighteen pages was known to the government on May 6, 2026. The government's response to those facts was to seek no complaint, no warrant, and no condition of any kind for the next four months and four days.

The Memorandum offers no explanation for that choice, and none is required; investigative timing is the government's prerogative. But the Bail Reform Act asks a specific question — whether conditions can reasonably assure appearance and safety, 18 U.S.C. § 3142(e)(1) — and on that question the government's four months of conduct is evidence, the most probative evidence in the record, of the government's own answer. *United States v. Medina*, No. 2:25-cr-126-Z-BR-1, 2025 U.S. Dist. LEXIS 262559, at *12 (N.D. Tex. Dec. 19, 2025) ("It defies logic that the Government would leave an individual on the streets for 14 months who presented a danger to the community."); *United States v. Patriarca*, 776 F. Supp. 593, 602–03 (D. Mass. 1991), *aff'd*, 948 F.2d 789 (1st Cir. 1991). A memorandum that recites the surveillance in detail and omits what the government did with it has conceded the point by silence.

## II. THE MEMORANDUM ARGUES GUILT, NOT CONDITIONS

The Memorandum's argument is, in substance, a single factor: the weight of the evidence. Twelve of its pages narrate surveillance. ECF 34 at 2–13. That narrative may be tested at trial; it is not the question at a detention hearing. The weight of the evidence is "the least important of the various factors," *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), because it "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt," *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010), and because § 3142(j) forbids the Court to treat a strong case on guilt as a reason for detention. A judge who does so has held the trial in advance.

What the Memorandum does not do is address a condition. The government acknowledges that it must prove by clear and convincing evidence that "no condition or combination of conditions" will reasonably assure safety. ECF 34 at 14–15. It then names none. Not one sentence of the Memorandum discusses a curfew, a travel restriction, a third-party custodian, home detention, or location monitoring — the conditions the Motion proposes, ECF 30 at 15–16 — or explains why any of them would fail. The Memorandum's entire treatment of the statutory question is a sentence: "It is the government's position that Green cannot abide by any conditions or combination of conditions of pretrial release that could be set in this matter." ECF 34 at 17.

That is a position, not evidence, and it is the precise gap Chief Judge Bredar found dispositive in *United States v. Bendann*, No. JKB-23-0278, 2023 U.S. Dist. LEXIS 159586, at *6 (D. Md. Sept. 7, 2023): "The Government, however, was not able to explain at the hearing how the Defendant would be able to take or continue these actions under the release conditions proposed by the Court." The government has had the Motion for a couple days. If it could explain how Mr. Green would traffic in cocaine under a curfew and Pretrial Services supervision — or under home detention with a monitor in a nurse practitioner's home — the Memorandum was the place to do it.

Nor does the Memorandum engage a single authority the Motion cites. It does not mention *Bendann*, in which the Chief Judge of this District found the presumption rebutted by prior compliance and an unblemished record of obeying court orders and faulted the government for failing to explain how conditions would fail. It does not mention *Davis*, in which this Court held that the danger of a return to drug dealing "can be addressed with release conditions" and released a defendant proffered to have made ten recorded drug sales and five firearm sales. 449 F. Supp. 3d at 539. It does not mention *Patriarca*, in which the First Circuit affirmed release under the presumption for the alleged head of an organized-crime family because he knew he was under surveillance and did not flee, or *Medina*, which holds that a long period at liberty after the government has the

evidence "undermine[s] the credibility of the Government's case for detention." 2025 U.S. Dist. LEXIS 262559, at *12. It does not mention this Court's own release of Mr. Mack in *Tao*, a presumption case with a firearms count, on standard conditions. ECF 30 at 14–15. And it does not mention Ms. Dancy.

The Memorandum cites two decisions of this District, *Weddington* and *White*, for propositions the Motion does not contest — that the presumption survives rebuttal as a factor and that the government may proceed by proffer. ECF 34 at 14. On every authority that decides this Motion, the government has nothing to say, and the Court should treat those authorities as what they are: unrebutted.

## III. "INHERENT" VIOLENCE IS AN ARGUMENT THAT THE PRESUMPTION CANNOT BE REBUTTED

The Memorandum concedes that the Motion is correct that no violence is attributed to Mr. Green, and answers that the point "fails to recognize the violence that is inherent to drug trafficking, especially in Baltimore City," so that the danger he poses is "irrefutable." ECF 34 at 17–18. The Court should recognize that argument for what it is. If violence is inherent in every cocaine case and the resulting danger is irrefutable, then no defendant charged under § 841(b)(1)(A) could ever rebut the presumption — which Congress expressly made "[s]ubject to rebuttal by the person." § 3142(e)(3).

This District has rejected exactly that reasoning: "rare is the case in which there will be no evidence of danger to the community based on alleged criminal conduct," and the statute therefore requires the Court to identify "the specific nature of the danger and how serious it is" and then "consider available release conditions that will address those concerns." *United States v. Davis*, 449 F. Supp. 3d 532, 539 (D. Md. 2020) (Boardman, M.J.). The government has identified no danger specific to Mr. Green — no weapon he possessed, no threat he made, no act of violence by him or anyone at his direction — and it has considered no condition.

The government's own conduct in this case refutes its premise twice over. If the danger from this conspiracy's participants were inherent and irrefutable, the government would not have left Mr. Green on the street for four months, and it would not have consented, four days ago, to the release on personal recognizance of codefendant Vanessa Dancy — charged in the same conspiracy, from whose residence the indictment alleges a Glock handgun and ammunition were seized — with no bond, no custodian, and no location restriction at all. ECF 18. The Memorandum does not mention Ms. Dancy either.

## IV. THE NEW PROFFERS DO NOT CHANGE THE ANALYSIS

The Memorandum proffers, for the first time, that seven kilograms of cocaine were found in a "trap" in a Ford SUV and that \$164,000 was seized from "Green's apartment." ECF 34 at 2, 15–16. Counsel has received no discovery and will test those proffers at the hearing; the indictment charges no count based on the vehicle seizure, and the "apartment" is the Towson address the Motion has already explained is not Mr. Green's residence. ECF 30 at 3.

But the Court need not resolve any of that to decide this Motion, because the proffers share the feature of everything else in the Memorandum: they describe May 6, 2026, and before. They were in the government's possession on the day it chose not to arrest him. They say nothing about the four months that followed, and the government — which surely continued to watch — alleges nothing about those months at all. The indictment's conspiracy period ends in May. ECF 14 at 1. A defendant the government describes as a daily courier for a multi-hundred-kilogram organization, who is then left unwatched by any court for four months and does nothing, is not the defendant the presumption imagines.

Two smaller points. First, the Memorandum describes Mr. Green's criminal history as "significant but dated," beginning "in 1994, at age 18." ECF 34 at 16. "Dated" is the operative word: the government is describing a man now fifty whose record begins

thirty-two years ago, and the Sentencing Commission's data on age and recidivism, ECF 30 at 9, are the answer. The Memorandum does not mention that the most recent felony conviction in that history rested on the work of the Gun Trace Task Force and ended with his release in 2019 for that reason. ECF 30 at 5, 10.

Second, the Memorandum says Mr. Green "purportedly" works as a handyman for a family member. ECF 34 at 16. Dream Team LLC is a registered business; its records and Mr. Green's work schedule will be provided to Pretrial Services, and the government is free to verify them.[1]

## V. CONCLUSION

The government has had every fact in its Memorandum since May 6. On those facts it left Shane Green at liberty, under no conditions, for four months, and he passed the test. The Memorandum does not explain that choice, does not address a single proposed condition, and does not mention the codefendant it released four days ago. Mr. Green renews his request for release on a curfew with travel restricted to the District of Maryland, or, in the alternative, to the custody of Iesha Wilkerson on home detention with location monitoring and leave to work, for the reasons stated in the Motion and here.

---

[1]The Memorandum states that it is submitted "in advance of defendant Cori Grant's detention hearing," ECF 34 at 1, and in places its description of the evidence appears to carry over from a submission concerning Mr. Grant — for example, the thirty-eight kilograms it emphasizes were seized from Mr. Grant's vehicle, not Mr. Green's, *id.* at 13, 15–16. Counsel raises the point not to fault the government but because the Court must evaluate Mr. Green on his own record. To the extent the Memorandum attributes to him conduct, quantities, or seizures that belong to a codefendant, the government should be held to what it can proffer about Mr. Green specifically.

Dated: September 14, 2026

Respectfully submitted,

____________/s/_______________
Tony N. Garcia, Esq.
Garcia Law, PC
7 St. Paul Street, Suite 1100
Baltimore, Maryland 21202
Tel: (410) 814-4600
Email: tony@tngarcialaw.com

*Counsel for Defendant Shane Green*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of September, 2026, a copy of the foregoing Reply was served on all counsel of record via the Court's CM/ECF system.

__________/s/____________
Tony N. Garcia, Esq.