**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.: MJM-26-0274** |
| | * | |
| **GEORGE ROBINSON,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**…oOo…**

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits this Detention Memorandum in advance of defendant George Robinson's detention hearing scheduled for Wednesday, September 16, 2026, at 1:30 p.m.

## Introduction

The Court should order detention. Defendant Robinson is charged in the Indictment with: (1) Conspiracy to Distribute and Possess with Intent to Distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); (2) Possession with Intent to Distribute five kilograms or more cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Counts Two and Three); and (3) Possession with Intent to Distribute five kilograms or more of cocaine and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Four) . ECF no. 29. Defendant George Robinson is the leader of a large-scale drug trafficking organization – the Robinson Drug Trafficking Organization ("Robinson DTO"). The Robinson DTO trafficked huge, kilogram quantities of cocaine obtained from a source of supply in Mexico. The drugs were usually transported and concealed in steel structures loaded onto flatbed tractor trailers. The loads of cocaine were delivered to one of many warehouses utilized by the Robinson DTO, where the

drugs were unloaded and then distributed to the Robinson DTO's customers. During the investigation, investigators determined that Robinson received large shipments of drugs and then distributed them to his customers. Robinson was assisted by co-defendant Green with distributing large, kilogram quantities of cocaine to the Robinson DTO's customers, such as co-defendant Cori Grant. In May 2026, federal law enforcement executed search and seizure warrants on the members of the Robinson DTO and seized large amounts of cocaine (approximately 58 kilograms of cocaine);[1] approximately twelve kilograms of fentanyl;[2] approximately $1.6 million in U.S. currency; and small amounts of other controlled substances.

Given the seriousness of the offense, and Robinson's leadership in the Robinson DTO, Green's criminal history, and the danger posed by Green to the community, it is apparent that no condition or combination of conditions will reasonably assure the safety of the community.

## **Factual and Procedural Background**

In September/October 2025, DEA Agents initiated an investigation into the Robinson DTO. During the investigation into the Robinson DTO, agents learned from multiple confidential sources that Robinson was a well-known large-scale drug supplier in Baltimore, Maryland. The CSs estimated that Robinson obtained between 50 to 150 kilograms of cocaine at a time. Once source provided that Robinson also obtained and distributed heroin and/or fentanyl.

During the investigation into Robinson and the Robinson DTO, investigators learned that Robinson received large shipments of drugs that were concealed inside steel structures packed in crates loaded on flatbed trailers and delivered to him at his two warehouses – the Evergreen Street

---

[1] 83 kilograms of cocaine were seized from the Robinson DTO in November 2025, as discussed below.

[2] Twelve kilograms of fentanyl contain enough lethal doses to kill the majority of the population of State of Maryland.

warehouse and the Commerce Drive warehouse. Robinson then unloaded the drugs and concealed them inside his warehouses. Robinson then concealed drug proceeds (U.S. currency) inside the crates/steel structures, loaded them onto flatbed trailers, then shipped them to his source of supply of drugs.

During the investigation, the Robinson DTO received numerous shipments of drugs at Robinson's warehouses. Specifically, shipments of suspected narcotics were received by the Robinson DTO on the following dates:

- October 27, 2025
- November 13, 2025
- January 2, 2026
- February 3, 2026
- April 10, 2026
- May 4, 2026

The shipments of drugs usually arrived on flatbead trailers, concealed in steel structures as depicted below:



*Delivery of drugs to the Robinson DTO in October 2025*




*Delivery of drugs to the Robinson DTO in January 2026*




*Delivery of drugs to the Robinson DTO in February 2026*




*Delivery of drugs to the Robinson DTO in April 2026*

While investigating the Robinson DTO, law enforcement agents identified co-defendant Shane Green as a significant member and large drug customer of the Robinson DTO. When the large, kilogram-quantity shipments of cocaine arrived in Baltimore at the Robinson DTO's warehouses, Green appeared at the warehouses to assist and distribute the large, kilogram-quantity of drugs for the Robinson DTO. Green was observed meeting with co-defendant Cori Grant on many occasions, exchanging large bags containing kilogram-quantities of cocaine and U.S. currency.

For example, following the arrival of the shipment of drugs at the Robinson DTO's Evergreen Street warehouse in early November 2025, Green arrived at the Evergreen Street warehouse in his black 2014 Ford Edge SUV. Green parked in the rear of the warehouse near the roll-up door. Green left and returned to the warehouse in his Ford vehicle numerous times that

day and on the days following the arrival of the shipment of drugs to the warehouse.




*Activity at the Evergreen Street warehouse on November 7, 2025*

On November 13, 2025, another tractor trailer delivered 16 wooden crates with yellow structures inside of them to the Evergreen Street warehouse.



*Shipment of drugs at the Evergreen Street warehouse on November 13, 2025*

After the shipment of drugs arrived on November 13, 2025, Green was observed at the Evergreen Street warehouse in his Ford SUV. Investigators believe Green was at the warehouse to pick-up drugs and deliver them the DTO's customers.

On November 15, 2025, Green arrived at the Evergreen Street warehouse in his Ford vehicle and delivered a large, heavy duffel bag to Robinson. Robinson then placed the bag in his box truck. Law enforcement agents believe that the duffel bag contained drug proceeds.

On November 20, 2025, court-authorized GPS data[3] from Robinson's KIA vehicle showed

[3] United States District Court for the District of Maryland, matter no. 1:25-mj-03002-JMC.

Robinson left his apartment in Towson, Maryland, stopped briefly in Baltimore, and traveled to BWI airport. While at BWI airport, Robinson picked up an individual. From there, Robinson drove to his warehouse located on Commerce Drive. At the warehouse, Robinson carried numerous weighted bags into the warehouse, accompanied by his worker and the other man. Robinson and his worker then left the warehouse with an oxygen tank, commonly used for welding. The court-authorized GPS tracker on Robinson's KIA indicates that they went to a business that sells welding gases and supplies. They returned to the warehouse after this short trip, leading investigators to believe they had gone to refill the welding tank.

At approximately 2:09 p.m. on November 20th, Robinson was observed at his warehouse on Evergreen Street in Baltimore City. Investigators observed Robinson's worker and another individual peaking around the corner of the warehouse, wearing gloves, as if monitoring the front gate entrance. At approximately 2:27 p.m., they locked the front door of the warehouse and pulled on the door to ensure it was locked. Minutes later, co-defendant Angela Pugh-Smith arrived at the warehouse, driving a white Ford pick-up truck, bearing Ohio tag number KLC1866. Pugh-Smith parked in the rear of the Evergreen Street wareshouse. Less than an hour later, the pick-up truck pulled out of the warehouse and left the location, followed by investigators.

Suspecting the truck was carrying drugs and/or drug proceeds, investigators coordinated with the Washington County, Maryland Sheriff's Office ("WCSO") to conduct a traffic stop of the pick-up truck operated by Pugh-Smith while it traveled westbound on Interstate 70. During the stop, a WCSO K-9 unit alerted for the presence of narcotics. During the traffic stop, a concealed compartment, or "trap," was found under the bed of the pick-up truck. The pick-up truck was towed, and a search warrant was obtained the following day. A search of the concealed

compartment/trap resulted in the seizure of approximately 83 kilograms of suspected cocaine, each packaged with a distinctive logo and heavily coated in grease.






After the pick-up truck left the Evergreen Street warehouse, Robinson, his worker, and the other individual returned to the Commerce Street warehouse and remained there until after

midnight. During that time, agents believe the three men were packaging drug proceeds into the yellow crates/steel structures while they were inside the Commerce Street warehouse.

On November 25, 2025, a flatbed trailer arrived at the Commerce Drive warehouse and all 16 crates/steel structures were loaded on the trailer and hauled away.




*Tractor trailer loaded with drug proceeds preparing for departure on November 25, 2025*

On January 2, 2026, a tractor trailer with a flatbed arrived and parked at the Robinson DTO's warehouse located on Commerce Drive in Halethorpe, Maryland. The flatbed carried approximately 16 wooden crates that appeared to have metal/steel structures inside of them.[4] Robinson and his unidentified worker unloaded all the crates using a forklift and moved them to the rear of the warehouse through the roll-up door. On Janaury 9, 2026, Green and Robinson were observed entering Robinson's laundromat business located on Walbrook Avenue in Baltimore

[4] The wooden crates observed on January 2, 2026, appeared similar, if not identical, to the crates observed by investigators in late October 2025, and mid-November 2025.

City. A few minutes later, Green exited the location carrying a black bag. Robinson followed, carrying what appeared to be a box concealed under a blanket. Agents believe that Robinson and Green removed drugs or drug proceeds from the Commerce Drive warehouse and transported them to the Walbrook Avenue laundromat.




*Green and Robinson at Robinson's Walbrook Avenue laundromat on January 9, 2026*

The following day, January 3, 2026, Robinson and his worker returned to the Commerce Drive warehouse. At approximately 10:34 a.m., co-defendant Vanessa DANCY arrived at the rear of the warehouse, operating a black 2024 Hyundai truck. Robinson and his worker carried numerous weighted black trash bags out from the warehouse and placed two bags inside the black Hyundai vehicle and two bags into the Robinson's KIA vehicle, as depicted in the photos below.





Soon after, Robinson left in the KIA and Dancy left in the black Hyundai. At approximately 10:58 a.m., covert surveillance footage showed Dancy arriving in front of the Evergreen Street warehouse.

On February 3, 2026, a shipment of drugs were delivered to the Commerce Drive warehouse utilized by the Robinson DTO. On February 4, 2026, investigators saw Robinson arrive at the warehouse in one of his vehicles. Robinson's worker exited the vehicle and entered the warehouse via the front door as Robinson drove to the back of the building. Robinson then backed his vehicle to the rear door of the warehouse. Robinson and his worker proceeded to load three heavy trash bags into the rear passenger compartment area of the vehicle. The two men then departed the warehouse.



At approximately 4:45 p.m., investigators saw Robinson and Green meet near the intersection of Walbrook Avenue and North Monroe Street. The two men spoke briefly and then left the area. Approximately 35 minutes later, investigators saw Robinson and Green meet again in the 2300 block of Windsor Avenue near the intersection of North Bentalou Street. Green retrieved two of the three large trash bags filled with what appeared to be numerous rectangular objects in each bag, consistent with the shape of kilograms of narcotics. Green placed the two bags into his vehicle and drove away. Green returned a short time later and retrieved the third black trash bag from Robinson's vehicle and place the bag into his vehicle. Green then left the area, followed by investigators.





A few minutes later, investigators observed Green parking his car in the 2000 block of Wheeler Avenue, Baltimore, Maryland 21216. There, investigators observed Green meet with Grant. They loaded three weighted black trash bags into the trunk of Grant's vehicle. Investigators then observed Green carrying two duffel bags that appeared to be heavy away from Grant's vehicle and placed the duffel bags into his vehicle. The two men then left the area. Investigators believe that that the black trash bags contained kilogram quantities of drugs and the duffel bags were filled with bulk quantities of U.S. currency that was payment for the drugs.

On April 10, 2026, the Robinson DTO received another large shipment of drugs concealed in crates/streel structures. The shipement was delivered to a third warehouse associated with the Robinson DTO, located on Kirk Avenue in Baltimore. After obtaining the supply of drugs, the Robinson DTO began distributing the drugs immediately. At approximately 4:40 p.m. on April 10th, Robinson carried three weighted black bags out of the warehouse located on Commerce Drive and placed the bags into one of his vehicles. He then left the warehouse. At or around that same time, Grant traveled to his apartment in Towson, Maryland.

Investigators later located Robinson in the rear of 3505 Wabash Avenue meeting with Green. Around that time, court-authorized GPS tracking data from Grant's vehicle indicates that Grant left his Towson apartment and traveled into Baltimore, parking in the area of Ocala Avenue and Towanda Avenue. Based on previously patterns observed by law enforcement agents, investigators believed Green was obtaining drugs from Robinson to be delivered to Grant.

Green then left Robinson and drove to Ocala Avenue. Green parked his vehicle near Grant's vehicle. Green removed two weighted black bags from his vehicle and carried them to Grant's vehicle. Green placed both bags into the trunk of Grant's vehicle and then spoke to Grant briefly. Green then walked away from Grant's vehicle carrying two red weighted bags as Grant left the location. Green placed the two red bags into his vehicle and left the location.




On May 4, 2026, 27 federal search and seizure warrants were obtained for persons, residences, and vehicles involved with the Robinson DTO.[5] On that same day, the Robinson DTO obtained a new supply of drugs on the morning of May 4, 2026, at the warehouse located on Commerce Drive.

On May 5, 2026, the Robinson DTO continued to distribute drugs to their customers. Specifically, Robinson obtained a supply of drugs from the Commerce Drive warehouse and transported them to his warehouse located on Evergreen Street where they were placed into the rear of co-defendant Green's vehicle. Green then left the Evergreen Street warehouse in his vehicle and traveled to the 2000 block of Ruxton Avenue where he met with Grant. Green removed the bags filled with kilogram quantities of cocaine and placed them into the trunk of Grant's vehicle. Green and Grant then moved their vehicles one block over where Green removed bags from Grant's vehicle and placed them into his vehicle. Investigators then followed Grant to the 1600 block of Roundhill Road in East Baltimore where he pulled curbside. Grant appeared to be waiting

[5] United States District Court for the District of Maryland, matter nos. 1:26-mj-01070-CJC through 1:26-mj-01096-CJC.

for someone, likely to conduct a drug transaction. Investigators decided to execute the search warrants pertaining to Grant and his vehicle. Investigators apprehended Grant without incident and removed him from his vehicle. Investigators seized two trash bags and a bookbag containing a total of 38 kilograms of cocaine from the trunk of Grant's vehicle.




*May 5th exchange between Green and Grant - 38 kilograms of cocaine seized*

In sum, investigators seized from the Robinson DTO more than 140 kilograms of cocaine; approximately twelve kilograms of fentanyl (enough to kill a significant portion of the population in Maryland); smaller amounts of a variety drugs (including methamphetamine); approximately $1.5 million in U.S. currency (over $1 million in U.S. currency seized from properties owned by or associated with Robinson); firearms; drug packing paraphernalia; and dozens of cellular devices.

**Argument**

When there is probable cause to believe that a defendant committed an offense under the Controlled Substances Act that carries a maximum sentence of 10 years or more of imprisonment, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). That presumption is subject to rebuttal by the defendant, which is a "limited burden of production"

for the defendant to show he does not pose a risk of flight or danger to the community. *United States v. Weddington*, Crim. No. RDB-19-597, 2020 WL 4569524, *2 (D. Md. Aug. 7, 2020) (quoting *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). However, the presumption in favor of detention is not eliminated once the defendant meets the burden of production; it becomes a factor to be considered in evaluating whether to detain the defendant. *Id.*

When seeking detention based on community safety or risk of flight, the government's burden is to demonstrate the risk posed by the defendant by clear and convincing evidence. 18 U.S.C. § 1342(f)(2). When seeking a detention order, the government may proceed by proffer of evidence. *See United States v. White*, Crim. No. PWG-13-436, 2015 WL 2374229, *2 (D. Md. May 15, 2015). In determining whether detention is warranted, 18 U.S.C. § 3142(g) directs the Court to consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release.

Here, each of the Section 3142(g) factors weigh in favor of detention. There is clear and convincing evidence that no condition or combination of conditions can assure the safety of the community.

<u>Nature and Circumstances of the Offense</u>

Robinson is charged with serious drug offenses that carry significant penalties, including counts that carry mandatory minimum sentences of ten years' imprisonment up to a maximum sentence of life imprisonment. The specific circumstances of the conduct underlying the offenses heighten their seriousness. In sum, Robinson was the leader of one of the largest drug trafficking organizations operating in Baltimore. Over the course of the conspiracy, the Robinson DTO

trafficked and distributed hundreds of kilograms of cocaine in around the Baltimore metropolitan area. The DTO not only sold drugs directly to customers for individual use, but also in larger distribution-level quantities to other potential sellers who could then go on to further distribute drugs in Maryland and beyond.

Robinson's network was complex, using co-defendants Green, Dancy, and others to assist with the distribution of narcotics, keeping Robinson at arms-length from the mid- and lower- level trafficking. In addition, Robinson and the DTO used multiple vehicles, some of which contained traps for concealing drugs, to transport and distribute drugs in and around Baltimore.

Importantly, the nature of the offenses is serious enough that it creates a presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). Even if Robinson could meet his burden to produce any evidence suggesting he may not be a danger to the community, that presumption remains a factor. Overall, the seriousness of the charged offenses weighs in favor of detention.

<u>Weight of the Evidence</u>

The government's evidence is strong. During the investigation regular and sometimes daily surveillance by law enforcement agents captured Robinson and his DTO's covert movements. Through covert surveillance methods, law enforcement agents were able to track and monitor the movements of Robinson and other members of the DTO during the investigation. Robinson was regularly observed meeting with Green, Dancy, and others following the deliveries of drug shipments to the DTO. In addition to the 83 kilograms of cocaine seized in November 2025, large quantities of drugs were seized in May 2026. Law enforcement agents seized approximately 38 kilograms of cocaine from Grant following an exchange from Robinson to Green, and then from Green to Grant. An additional four kilograms of cocaine were seized from Grant's apartment. Six kilograms of cocaine were seized from the Commerce Drive warehouse.

Robinson's laundromat on Walbrook Avenue contained approximately $769,000 in U.S. currency, as well as approximately eight kilograms of fentanyl and a firearm. Approximately $314,000 in U.S. currency was seized from Robinson's residence located on King William Drive. The cumulative evidence against Robinson and other members of the DTO is significant, if not overwhelming, and demonstrates clearly that Robinson was a major supplier of cocaine and other deadly narcotics in the Baltimore metropolitan area. This factor strongly weighs in favor of detention.

History and Characteristics of the Defendant

Robinson has a dated criminal record, but significant for a prior federal conviction for drug trafficking. In *U.S. v. George Robinson*, criminal no. AMD-99-0553, Robinson was convicted of Possession with Intent to Distribute Heroin and received a sentence of 37 months' imprisonment, followed by four years of supervised release. While Robinson owns several businesses, the investigation revealed that the businesses were utilized to facilitate his substantial drug trafficking.

Robinson's conduct in this case paints a clear picture of drug trafficking as his primary source of income. This factor alone weighs strongly in favor of detention.

Nature and Seriousness of the Danger to Any Person or the Community

The drugs received by and dispensed by the Robinson DTO present a serious and significant danger to the community. The risks associated with cocaine are well known to this Court. Based on the evidence gathered throughout the investigation, the controlled substances seized in May 2026 (large quantities of cocaine, fentanyl, etc.) represent just a fraction of the Robinson DTO's regular business of trafficking and distributing colossal amounts of drugs in the Baltimore metropolitan area and beyond. Moreover, fentanyl is one of the most lethal drugs available on the streets, and approximately eight kilograms of fentanyl were seized from

Robinson's laundromat – enough to wipe-out the majority of the population of Maryland. There is no doubt that Robinson's drug trafficking caused significant damage to the Baltimore community that is common to drug trafficking, including violence that is always present at the street level. The distribution of massive quantities of cocaine and fentanyl are inherently linked to the violence that is associated with street-level drug-dealing, and Robinson and his DTO were a major supplier and source of those drugs to the lower-level drug consumers. In addition, the lethality of fentanyl is undisputable, and the number of lives affected by these drugs is immeasurable. Thus, the danger Robinson poses to the community is irrefutable and weighs in favor of detention.

In short, evaluation of all the Section 3142(g) factors shows, by clear and convincing evidence, that the defendant George Robinson should be detained pending trial.

**Conclusion**

For the reasons stated above, and for any others presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the safety to the community or Robinson's appearance for court proceedings. Accordingly, defendant George Robinson should be detained pending trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

John W. Sippel, Jr.
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4807

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Government's Detention Memorandum was served via the ECF filing system and by email to:

Jeremy Eldridge, Esquire
One South Street, Suite #2150
Baltimore, Maryland 21202

John W. Sippel, Jr.
Assistant United States Attorney